JUDGE SULLIVAN

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| THE OTOE-MISSOURIA TRIBE OF INDIANS, a federally-recognized Indian Tribe; GREAT PLAINS LENDING, LLC, a wholly-owned tribal limited liability company; AMERICAN WEB LOAN, INC., a wholly-owned tribal corporation, and OTOE-MISSOURIA CONSUMER FINANCE SERVICES REGULATORY COMMISSION, a tribal regulatory agency; LAC VIEUX DESERT BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, a federally-recognized Indian Tribe; RED ROCK TRIBAL LENDING, LLC, a wholly-owned tribal limited liability company; LAC VIEUX DESERT TRIBAL FINANCIAL SERVICES REGULATORY AUTHORITY, a tribal regulatory agency, | |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | **CASE NO.** |
| NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES; BENJAMIN M. LAWSKY, in his official capacity as Superintendent of the New York State Department of Financial Services, | |
| Defendants. | |

## INTRODUCTION

Through a campaign of misrepresentations, threats, and coercion, the State of New York has launched an attack on the plaintiff Tribal Nations' inherent sovereignty. At the core of this campaign is the State's threat to impose its laws upon online lending businesses owned, operated, and regulated by Tribal Nations, in brazen disregard to the inherent sovereignty that these nations have had since before the founding of the United States and which Supreme Court has over the course of nearly two centuries upheld. The objective of the State's campaign is, in

the State's own words, to "choke off" the Tribal businesses, no matter if that means crippling a vital economic engine for the sovereign Tribal Nations.

As part of this campaign, the State has not only threatened the businesses owned and operated by Tribal Nations to "cease and desist" from offering their online credit products to "New York consumers," but has used the big stick of government power to threaten and coerce third parties, such as banks and clearing houses, which provide services to the Tribal businesses. Not satisfied with driving these third-parties away, the State has also demonized the Tribal business to the consumer market by misusing its bully pulpit to carry out a publicity campaign falsely accusing the Tribal Nations of being criminal usurers that "swoop in and prey on struggling families when they are at their most vulnerable." If not stopped, the State's bare-knuckle attack on the Tribal Nations' sovereignty will continue to cause them irreparable harm, ultimately destroying the Tribal businesses and devastating the economies of the Tribal Nations.

At bottom, the State has no authority to impose its laws on, or to otherwise regulate the activities of, the Tribal businesses, which operate their consumer lending activities from their Tribal territories, under Tribal law, and under the regulation of Tribal regulatory agencies. In any event, contrary to the State's disparagement, the Tribal Businesses do not prey on consumers, instead providing much needed access to financial services for those who cannot access credit through traditional lenders. The State's attack on the inherent sovereignty of the Tribal Nations must come to an immediate stop, before it causes them further devastating irreparable harm.

Plaintiffs the Otoe-Missouria Tribe of Indians and the Lac Vieux Desert Band of Lake Superior Chippewa Indians (collectively, "Tribal Governments"); their wholly owned corporate entities, Great Plains Lending, LLC, American Web Loan, Inc., and Red Rock Tribal Lending, LLC (collectively, "Tribal Corporations"); and their respective regulatory agencies established pursuant to tribal law and charged with the responsibility and oversight over the relevant activities of the Tribal Corporate Plaintiffs, Ottoe Missouria Consumer Finance Services Regulatory Commission, and Lac Vieux Desert Tribal Financial Services Regulatory Authority,

2

(collectively, "Tribal Regulatory Agencies" and, together with the Tribal Governments and the Tribal Corporations, "Plaintiffs" or "Tribal Nations"), sue defendants New York State Department of Financial Services and Benjamin M. Lawsky, in his official capacity as the Superintendent of the New York State Department of Financial Services (collectively, "New York" or the "State") and allege:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to hear this action pursuant to 28 U.S.C. § 1331 and § 1362.

2.     Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) in that Defendant resides in this District and he has committed a substantial part of the acts alleged in this District.

## PARTIES

3.     Plaintiff Otoe-Missouria Tribe of Indians ("Otoe-Missouria") is a federally-recognized Indian tribe with its tribal government offices located in Red Rock, Oklahoma.

4.     Plaintiff Great Plains Lending, LLC ("Great Plains") is a limited liability company wholly-owned and operated and formed under the laws of the Otoe-Missouria, with its principal place of business in Red Rock, Oklahoma. Great Plains is engaged in online small dollar lending pursuant to tribal law and subject to tribal regulation. Great Plains voluntarily complies with all applicable federal consumer protection laws.

5.     Plaintiff American Web Loan, Inc. ("AWL") is a corporation wholly-owned and operated and formed under the laws of the Otoe-Missouria, with its principal place of business in Red Rock, Oklahoma. AWL is engaged in online small dollar lending pursuant to tribal law and subject to tribal regulation. AWL voluntarily complies with all applicable federal consumer protection laws.

6.     Plaintiff the Otoe-Missouria Consumer Finance Services Regulatory Commission is a regulatory agency formed pursuant to Tribal law and functioning as a governmental arm and instrumentality of the Otoe-Missouria, with its principal place of governmental business located

3

in Red Rock, Oklahoma and is tasked with regulating all consumer financial services provided by both Great Plains and AWL

7.     Plaintiff Lac Viex Desert Band of Lake Superior Chippewa Indians ("LVD") is a federally-recognized Indian tribe with its tribal governmental offices located in Watersmeet, Michigan.

8.     Plaintiff Red Rock Lending, LLC ("Red Rock") is a limited liability company wholly-owned and operated and formed under the laws of LVD, with its principal place of business in Watersmeet, Michigan.  Red Rock is engaged in online small dollar lending pursuant to tribal law and subject to tribal regulation.  Red Rock voluntarily complies with all applicable federal consumer protection laws.

9.     Plaintiff Lac Vieux Desert Tribal Financial Services Regulatory Authority  is a regulatory agency formed pursuant to tribal law and functioning as a governmental arm and instrumentality of LVD, with its principal place of governmental business located in Watersmeet, Michigan and is tasked with regulating all consumer financial services provided by Red Rock.

10.    Defendant New York State Department of Financial Services is an executive branch agency of the State of New York, whose principal place of business is located at 1 State Street, Manhattan, New York.

11.    Defendant Benjamin M. Lawsky, sued in his official capacity, is the Superintendent of the New York Department of Financial Services, whose principal place of business is located at 1 State Street, Manhattan, New York.

## FACTUAL ALLEGATIONS

### A.     The Inherent Sovereignty of Indian Tribes.

12.    By the time Christopher Columbus and other European adventurers landed in what is now known as North America, millions of Native Americans were living in the area that would become the United States.  Those Native Americans were part of Tribal Nations that were self-governing, exerting control over land and other natural resources.  For that reason, exploring

4

foreign powers treated the tribes as sovereign nations and, accordingly, entered into treaties with the tribes.

13.     For thousands of years, Native Americans have governed themselves through tribal laws, cultural traditions, and religious customs. This "inherent sovereignty" predates the founding of the United States and the ratification of the Constitution. Article 1, Section 8 of the Constitution vested Congress with the authority to engage in relations with the tribes. Until 1871, the United States' relations with Native American tribes were defined and conducted through treaties, as befitted relations between sovereign nations. Indeed, it is not subject to dispute that the relationship between the United States and the Tribal Nations is "one between sovereigns, *i.e.*, between a government and a government." (U.S. Dep't. of the Interior, Indian Affairs, http://www.bia.gov/FAQs/.)

14.     Accordingly, when the sovereignty of Indian tribes was first challenged, the Supreme Court, through Chief Justice Marshall, "articulated the fundamental principle that has guided the evolution of federal Indian law to the present: *That tribes possess a nationhood status and retain inherent powers of self-government*." (*Id.*) Almost two centuries ago, in *Cherokee Nation v. Georgia*, 30 U.S. 1, 16 (1831), the Court found that the Cherokee Tribe was "a distinct political society separated from others, capable of managing its own affairs and governing itself." Consistent with this principle of sovereignty, one year later the Supreme Court in *Worcester v. Georgia*, 31 U.S. 515 (1832), again writing through Chief Justice Marshall, held that Indian tribes are generally immune from state laws.

15.     Only Congress, pursuant to the power over Indian affairs conferred by the Constitution, has the power to invade and diminish the tribes' inherent sovereignty. *U.S. v. Kagama*, 118 U.S. 375 (1886). Because the tribes' sovereignty pre-dates contact with western European settlers and does not arise from the Constitution, it is limited only to the extent it has been relinquished through treaty with the United States or extinguished by Congress. Absent express authorization from Congress, a tribe's sovereignty is not subject to invasion or

5